UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

|  |  |
|---|---|
| SCVNGR, INC. d/b/a LEVELUP<br><br>Plaintiff,<br>v.<br><br>DAILYGOBBLE, INC. d/b/a RELEVANT<br><br>Defendant. | Case No. 6:15-cv-00493- JRG-KNM<br><br>**Oral Argument Requested** |

### PLAINTIFF SCVNGR, INC. d/b/a LEVELUP'S MOTION FOR ENHANCED DAMAGES (35 U.S.C. § 284) AND ATTORNEY FEES (35 U.S.C. § 285)

On January 14, 2015, this Court entered judgment in favor of the plaintiff SCVNGR, Inc. d/b/a LevelUp ("LevelUp") on its Complaint for patent infringement against defendant DailyGobble, Inc. d/b/a Relevant ("Relevant"), pursuant to a Rule 68(a) Offer of Judgment made by Relevant on December 9, 2015. Dkt. No. 90. Prior to its Offer of Judgment, Relevant had never offered any good faith argument for its refusal to cease infringement of twelve asserted claims of LevelUp's U.S. Pat. No. 8,639,619 ("the '619 patent"). Rather, since the filing of LevelUp's Complaint on May 26, 2015, Relevant engaged in a serious of vexatious litigation tactics designed only to delay LevelUp's enforcement of its patent rights and to impose unnecessary burden and expense on LevelUp.

Because of Relevant's willful infringement over the past twelve months, and its bad faith litigation tactics over the past seven months, this Court should: (i) declare the case "exceptional" under Section 285 of the Patent Act and award LevelUp its attorney fees; and (ii) enhance, pursuant to Section 284, the damages awarded to LevelUp by trebling the awarded amount.

I.      **This Court May Award Attorney Fees and Enhanced Damages to a Prevailing Party**

Section 285 of the Patent Act authorizes the Court, "in exceptional cases," to "award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. This Court's judgment in favor of LevelUp, pursuant to Relevant's offer under Rule 68(a) (Dkt. No. 88), determined that Relevant infringed twelve claims of the '619 patent, awarded LevelUp $30,000 in damages (inclusive of an unspecified amount of costs), and entered an injunction prohibiting Relevant from any continued infringement of the '619 patent. LevelUp is, therefore, a "prevailing party" for purposes of Section 285. *See Bosley v. Mineral Cty. Comm'n*, 650 F.3d 408, 412 (4th Cir. 2011) (plaintiff entitled to attorney fees after Rule 68 judgment in action under 42 U.S.C. § 1983); *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004) ("to be a prevailing party, one must 'receive at least some relief on the merits,' which 'alters…the legal relationship of the parties'").

The only added prerequisite for an award of attorney fees under Section 285 is that the case be "exceptional." In 2014, the Supreme Court held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position…or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756, (2014). The Court further explained that a determination of "exceptionality" must be made on a case-by-case basis, taking into account a totality of the circumstances including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1756, n.6. The Federal Circuit holds that a case may be "exceptional" where a defendant's infringement is determined to be willful, and/or where a party litigated an infringement defense in a vexatious or unreasonable manner. *See id; Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1375 (Fed. Cir. 2008) (fees awarded for willful

infringement); *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000)

("Among the types of conduct which can form a basis for finding a case exceptional are willful

infringement… misconduct during litigation, [and] vexatious or unjustified litigation….").

Section 284 of the Patent Act, which is closely related to Section 285, authorizes this

Court, following a determination of damages, to "increase the damages up to three times the

amount found or assessed." *See* 35 U.S.C. § 284. The Federal Circuit has interpreted Section 284

to be limited to cases where the infringement is willful. *Bard Peripheral Vascular, Inc. v. W.L.*

*Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012); *In re Seagate Tech., LLC*, 497 F.3d

1360, 1371 (Fed. Cir. 2007) (*en banc*); *see generally Safeco Ins. Co. of Am. v. Burr,* 127 S.Ct.

2201, 2215 (2007). To establish that Relevant's infringement was willful, LevelUp must show

"objective recklessness," meaning both that: (i) Relevant "acted despite an objectively high

likelihood that its actions constituted infringement of a valid patent," and (ii) "this objectively-

defined risk...was either known or so obvious that it should have been known to [Relevant]." *Bard*,

682 F.3d at 1005. The first, objective prong of the test for willfulness is satisfied where an

infringer has not asserted any objectively reasonable defense to a charge of infringement. *Spine*

*Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.,* 620 F.3d 1305, 1319 (Fed. Cir. 2010); *see*

*also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1382 (Fed. Cir. 2014) (*petition for*

*rehearing en banc denied*, 780 F.3d 1357, 1360-61) (*cert. grated* 136 S. Ct. 356 (Oct. 19, 2015)).

Upon a showing of willful infringement, this Court examines nine factors to determine

whether, and to what extent, a damages award should be enhanced:

> (1) whether the infringer deliberately copied the ideas or design of
> another; (2) whether the infringer, when he knew of the other's
> patent, investigated the patent and formed a good faith belief that it
> was invalid or that it was not infringed; (3) the infringer's behavior
> in the litigation; (4) the infringer's size and financial condition; (5)
> the closeness of the case; (6) the duration of the misconduct; (7) the

remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct.

*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992).

As explained below, Relevant's infringement in this case, which Relevant never justified with an objectively reasonable defense, and for which it ultimately offered judgment, was the epitome of "willful."  Moreover, Relevant's willful infringement over the past twelve months was compounded by its vexatious litigation tactics over the past seven months. The Court should therefore award LevelUp attorney fees and enhanced damages under 35 U.S.C. §§ 284 and 285.

## II.  LevelUp Is Entitled to Attorney Fees Pursuant To Section 285 Because Relevant's Infringement Was Willful, and Relevant Engaged in Vexatious Litigation Tactics

Relevant's knowing and intentional infringement of LevelUp's '619 patent, from January through December 2015, was both "willful" and "exceptional." *See Octane Fitness*, 134 S. Ct. at 1756; *Seagate*, 497 F.3d at 1371. The facts uncovered through limited discovery establish that Relevant decided, in late 2014, to copy LevelUp's secure mobile payment functionality for a consumer mobile application that Relevant offered to Le Pain Quotidien, Inc. ("LPQ"), a restaurant chain based in New York City. Although Relevant asserts that it was unaware of the '619 patent at the time, Relevant's ignorance was a product only of its intentional disregard for LevelUp's rights in the system that Relevant chose to copy. Even after LevelUp initiated this action, and moved for a preliminary injunction, Relevant refused to cease its infringing activity for at least seven months before ultimately offering judgment.

Relevant never offered a genuine argument to justify its continuing infringement. Instead, Relevant engaged in frivolous motion practice and delay tactics. Relevant's willful disregard for LevelUp's rights renders the case "exceptional" and entitles LevelUp to an award of attorney fees under 35 U.S.C. § 285. *Octane Fitness,* 134 S. Ct. at 1756.

**A.   Relevant Knew, or Should Have Known, of the LevelUp '619 Patent by January 2015, and had Actual Knowledge of the Patent at Least by May 26, 2015**

LevelUp's '619 patent issued on January 28, 2014. Decl. of Andrew Boch ("Boch Decl."), ¶ 2, Ex. 1. Relevant admits, as it must, that it was aware of the '619 patent when it received service of LevelUp's Complaint on May 27, 2015. *See* Dkt. No. 10. Relevant, however, should have been aware of the patent much earlier, in connection with its decision to copy LevelUp's technology.

Beginning in early 2014, Relevant and LevelUp engaged in a series of conversations concerning the possibility of Relevant licensing and using LevelUp's secure mobile payment technology (as described in the '619 patent) within Relevant's mobile applications. Boch Decl., ¶¶ 3, 5. Under those auspices, on February 10, 2014, LevelUp sent an email to Gerrine Pan (Relevant's co-founder) containing information about LevelUp's mobile app software development kit ("SDK"), and the application programming interfaces ("APIs") for the LevelUp system, and including login credentials for Ms. Pan to access the LevelUp SDK and additional secure materials via the LevelUp website. *Id.* at ¶ 5, Ex. 3. This software and documentation provide the tools necessary to incorporate LevelUp's patented secure mobile payment method in a consumer mobile app. *Id.* Ms. Pan immediately forwarded her LevelUp access credentials to Dazhi Chen, Relevant's Chief Executive Officer. *Id.*, Ex. 4.

Rather than continuing licensing decisions, however, Relevant proceeded to copy LevelUp's secure mobile payment system.[1] Boch Decl., ¶ 8. In late 2014, LPQ selected Relevant (in direct competition with LevelUp) to build a branded consumer mobile app for LPQ including a mobile payment feature. *Id.* In early 2015, Relevant began piloting an app for LPQ that

---

[1] The only difference between LevelUp's commercial system and Relevant's mobile app for LPQ was that Relevant chose to display the consumer code in app as a bar code rather than a Quick-Response ("QR") code. Boch Decl., ¶ 8. The difference is not material to LevelUp's '619 patent. The patent claims expressly cover both embodiments. *E.g.*, Ex. 1 ('619 patent), claim 2.

replicated precisely the LevelUp secure mobile payment system that Relevant investigated during 2014. *Id*. Relevant even used the same third-party payment processing entity as LevelUp (Braintree) for Relevant's own system. *Id*. During pilot testing of that app, LPQ asked Relevant to explore an integration of LevelUp's secure mobile payment technology into the LPQ app. *Id*. at ¶¶ 9-11, Ex. 6, 7. On May 22, 2015, however, after several discussions with LevelUp, it became apparent that Relevant would not integrate LevelUp's technology through a license. *See id*. at ¶ 11, Ex. 8. LevelUp filed this action for patent infringement four days later.

During Relevant's investigation of LevelUp, both of Relevant's co-founders, Ms. Pan and Mr. Chen, registered individually for LevelUp user accounts. Boch Decl., ¶ 7. As such, their use and investigation of the LevelUp system, apps, SDKs, and APIs, throughout 2014 and 2015 was conducted expressly subject to LevelUp's User Terms of Service ("User Terms"), published on LevelUp's website and within each LevelUp app. *Id*., Ex. 5. LevelUp's User Terms include a notification to all users (in Section 3, under the subheading "Patents") that LevelUp's mobile apps and mobile SDK incorporate the methods and systems claimed in the '619 patent. *Id*.

In light of Relevant's detailed investigation of LevelUp's technology throughout 2014, and its replication of the technology for its own use in the LPQ mobile app in 2015, Relevant's alleged ignorance of LevelUp's '619 patent was due only to its own recklessness[2] as to whether the LevelUp system it was copying was subject to patent protection. Relevant's principals had at least constructive, if not actual, knowledge of the '619 patent pursuant to LevelUp's User Terms. Relevant therefore "should have known" of the LevelUp '619 patent at least by January 2015 when it launched the infringing pilot app for LPQ. *See i4i Ltd. P'ship v. Microsoft Corp*., 598 F.3d

---

[2] The subjective component of the test for willful infringement (*i.e*., "recklessness") requires a lesser showing than the "willful blindness" required to establish intent as an element of indirect patent infringement under 35 U.S.C. § 271(b) or (c). *Global-Tech Appliances, Inc. v. SEB S.A*., 131 S. Ct. 2060, 2069-2071 (2011) (the concept of "willful blindness [has] an appropriately limited scope that surpasses recklessness and negligence").

831, 860 (Fed. Cir. 2010) ("there is no evidence Microsoft ever made a good faith effort to avoid

infringement") (*aff'd*, 564 U.S. 91 (2011)); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd*., No.

2014-1492, 2015 WL 4639309, at *13 (Fed. Cir. Aug. 4, 2015) (*reh'g en banc denied in part*, 805

F.3d 1382 (Fed. Cir. 2015)) (finding willful infringement based on evidence of copying a

competitive product without actual knowledge of asserted patent); *State Indus., Inc. v. Mor-Flo*

*Indus., Inc*., 883 F.2d 1573, 1581 (Fed. Cir. 1989) (vacating denial of attorney fees where

defendant patterned its infringing product on the plaintiff's product).

## B. Relevant Knew that it Was Infringing the '619 Patent But Refused To Cease Its Infringing Activity

Relevant ultimately offered judgment that the secure mobile payment feature included in

the LPQ mobile app, copied from LevelUp's system, infringes twelve claims of LevelUp's '619

patent. Dkt. No. 88. Relevant asserts that it first learned of the '619 patent on May 27, 2015 when

it received LevelUp's Complaint. Even upon gaining actual knowledge of the '619 patent,

however, Relevant refused to cease its infringement for more than seven months.[3] Relevant's

continued infringement was objectively and subjectively "willful." *See Seagate*, 497 F.3d at 1371.

First, Relevant never offered an objectively reasonable defense that might have supported

its refusal to cease its now-established infringement. For example, during proceedings on

LevelUp's motion for preliminary injunction (*see* Dkt No. 41, Ex. 9, transcript), Relevant offered

only two arguments for non-infringement, including that: (a) the Relevant server does not

"transfer" payment instrument information to a payment processing entity, and (b) that the

Relevant server does not receive the claimed "token."  *See also*, Dkt. No. 41, pp. 10-12. Neither

argument held up under the cross-examination of Relevant's CEO, Mr. Chen. *See* Ex. 9 at 85-88.

---

[3] In fact, Relevant has continued to infringe the '619 patent and violate the terms of the
injunction entered January 14, 2016 (Dkt. No. 90). LevelUp is preparing a motion for contempt
sanctions to prevent the continuing infringement.

Second, in addition to the lack of any objectively plausible argument for non-infringement, Relevant's actions immediately after receiving LevelUp's Complaint for infringement demonstrate that Relevant's continued infringement was, subjectively, knowing and intentional. On May 27, 2015, less than thirty minutes after Relevant was served with LevelUp's Complaint, Relevant's CEO, Mr. Chen, contacted LevelUp by email in an attempt to revive discussions concerning Relevant's licensing of LevelUp's secure mobile payment technology. *See* Boch Decl., ¶¶ 12-13, Ex. 8; Ex. 9 (Transcript) at 77-79. Mr. Chen's immediate attempt to renew discussions toward a license for LevelUp's technology is a strong indication that Mr. Chen understood that Relevant's decision to copy the LevelUp system for the LPQ app infringed LevelUp's '619 patent.

Nine days later, on June 4, 2015, Mr. Chen spoke by phone to Andrew Boch, LevelUp's Chief Operations Officer. Boch Decl., ¶ 14. Mr. Chen represented that he had not been aware of LevelUp's '619 patent, and promised that Relevant would produce a "design around" to avoid infringing the '619 patent in the future. *Id*. Mr. Chen carefully added that, "based on advice from his counsel," his discussion with Mr. Boch should "not be taken as an admission of infringement by Relevant." *Id*. Mr. Chen never suggested during that call that Relevant believed it was not infringing. *Id.* His actions instead reflect a clear knowledge and understanding that Relevant's mobile app for LPQ infringed the LevelUp '619 patent. Within one week of that conversation, Relevant expanded its LPQ pilot from three locations to at least 27 locations. *Id*. at ¶ 15.

Relevant, however, never proposed any "design around" of the infringing LPQ mobile app. *Id*. at ¶ 16; Declaration of Brian Carroll ("Carroll Decl."), ¶ 4. In August 2015, Relevant reversed course and its counsel informed LevelUp that Relevant would not be proposing any "design around." Carroll Decl., ¶ 3. Relevant's counsel instead asserted, for the first time, that Relevant's mobile app for LPQ did ***not*** infringe LevelUp's '619 patent. *Id*. at ¶ 4. Subsequently, as detailed

below, Relevant engaged in a pattern of vexatious litigation, culminating in its offer of judgment

on December 9, 2015. Relevant's pattern of conduct establishes that it knew that its mobile app for

LPQ infringed the LevelUp '619 patent. Relevant's refusal to cease its infringement was "willful"

and renders this case "exceptional." *See Carnegie Mellon,* 2015 WL 4639309, at *13.

**C.  Relevant's Vexatious Litigation Tactics Additionally Render this Case "Exceptional"**

Rather than cease its knowing infringement of LevelUp's '619 patent in May 2015,

Relevant elected to continue its infringement and seek to delay resolution of LevelUp's claims

(presumably to create time for Relevant to attempt to develop a non-infringing alternative).

Relevant delayed this case through a series of vexatious litigation tactics, including frivolous

pleadings and motions, and repeated refusals to respond to discovery. Carroll Decl., ¶¶ 4-12.

1.  Relevant's Frivolous Pleadings and Motions

In response to LevelUp's Complaint, on June 10, 2015, Relevant filed a frivolous motion

to dismiss pursuant to Rules 12(b)(2) and 12(b)(3), asserting both a lack of personal jurisdiction

and improper venue. Dkt. No. 11. LevelUp's response in opposition explained the frivolity of

Relevant's motions, including by pointing out that Relevant conducts more than twenty percent of

its business in Texas. Dkt. No. 13. After forcing LevelUp to respond, Relevant simply withdrew

the motions to dismiss without reply. Dkt. No. 18; Carroll Decl., ¶ 5. Relevant's frivolous Rule 12

motions served only to delay the time for Relevant to respond substantively to LevelUp's

Complaint,[4] and to impose unnecessary burden and expense on LevelUp.

On July 10, 2015, Relevant finally answered LevelUp's Complaint, but also asserted four

frivolous state law counterclaims: Misappropriation of Trade Secrets, Tortious Interference with

Contract, Defamation, and Trade Libel. Dkt. No. 26. LevelUp explained the frivolous nature of the

---

[4] Relevant agreed to respond to the Complaint only after LevelUp pointed out that Relevant's withdrawal of its pending Rule 12 motions put Relevant into default. Carroll Decl., ¶ 5.

claims during a call with Relevant's counsel on July 22, 2015. Carroll Decl., ¶ 6. Relevant refused

to withdraw the counterclaims. *Id*. On July 27, 2015, LevelUp filed a Rule 12 motion to dismiss

the counterclaims. Dkt. No. 35. Despite its earlier refusal to withdraw the claims, Relevant did not

oppose LevelUp's motion to dismiss, and instead filed an amended counterclaim withdrawing the

frivolous claims. Dkt. No. 39. Once again, Relevant's tactics served no purpose other than delay

the action and impose unnecessary expense and burden on LevelUp. Carroll Decl., ¶ 6.

Following the pleadings, Relevant continued its attempts to delay any discovery in this

action by manufacturing a dispute concerning the parties' proposed protective order. Carroll Decl.,

¶¶ 7-8. For example, the parties agreed, on July 22, 2015, to the terms of a proposed protective

order and principals for each party executed that agreement. *Id*. at ¶ 2, Ex. 10; Dkt. No. 68 at 1-2.

On October 19, 2015, however, just two days before the deadline to submit the proposed

protective order, Relevant informed LevelUp that it would not honor that agreement. Carroll Decl.,

¶ 7. Relevant instead proposed a new draft order including burdensome provisions designed to

preclude LevelUp's lead trial counsel (who also served as in-house counsel) from representing

LevelUp. *Id*. The Court rejected Relevant's proposal on November 18, 2015. Dkt. No. 73.

Not surprisingly, Relevant refused to provide any discovery following the Court's ruling,

and instead filed a second, duplicative request for the same protective order on December 2, 2015.

Dkt. No. 79. This time, Relevant filed its request as an "***emergency***" motion without justification

and in a clear effort to prejudice LevelUp's counsel, who was unavailable. *Id*.; *see also* Dkt. No.

81. Once again, after forcing LevelUp's emergency response, Relevant simply withdrew its

duplicative and "emergency" motion for protective order. Dkt. No. 86; Carroll Decl., ¶ 8.

In sum, Relevant established in this case a pattern of making frivolous filings, forcing

LevelUp to respond with lengthy briefing, and then simply withdrawing the filings. Relevant's

actions render the case exceptional. *ReedHycalog UK, Ltd. v. Diamond Innovations Inc.*, No. 6:08-CV-325, 2010 WL 3238312, at *6 (E.D. Tex. Aug. 12, 2010) (finding case exceptional where "[defendant] repeatedly burdened the Court with unnecessary motion practice throughout this case," including asserting and abandoning positions); *see Octane Fitness*, 134 S. Ct. at 1756-57 (Relevant's conduct need not be "independently sanctionable" to justify an award of fees).

2.  Relevant's Efforts to Delay and Avoid Discovery

In addition to its frivolous filings, Relevant's efforts to avoid discovery have been equally vexatious. LevelUp made its first request for discovery in this action by motion on May 27, 2015. Dkt. No. 6. Six months later, Relevant had produced less than 2,000 pages, had failed to respond to interrogatories, and had repeatedly refused to provide witnesses for depositions.

The Court-ordered deadline to produce "all documents…that are relevant to the pleaded claims or defenses involved in this action" was October 21, 2015. Dkt. No. 65, ¶ 3(b). On that date, LevelUp produced nearly 50,000 pages of responsive material including electronic documents and email. Carroll Decl., ¶ 9. Relevant, by contrast, produced ***nothing***. *Id.* During a meet-and-confer requested by LevelUp, Relevant agreed to make a "substantial" production of documents one month after the deadline, by November 21, 2015. *Id.* On that date, Relevant produced less than 2,000 pages, most of which were "spam" marketing emails.[5] *Id.*

LevelUp served its First Set of Interrogatories immediately upon the opening of discovery, on October 15, 2015. Carroll Decl., ¶ 10. Relevant, after requesting and receiving a one-week extension for its responses, failed to respond or object. *Id.* On December 2, 2015, six days after the passage of Relevant's extended deadline to respond, LevelUp requested Relevant's responses during a meet-and-confer. *Id.* The responses that Relevant provided later that day were grossly

---

[5] During a second meet-and-confer, Relevant refused to commit to any date by which it would make any further production. At the time that LevelUp accepted the offered judgment on December 21, 2015, LevelUp was preparing a motion to compel. Carroll Decl., ¶ 9.

deficient in every respect. *Id.*, Ex. 11. Relevant served its Offer of Judgment just one week later, following LevelUp's demand for supplemented responses. Dkt. No. 88.

Relevant's "Invalidity Contentions," served on November 20, 2015 pursuant to Local P.R. 3-3, were similarly evasive. Carroll Decl., ¶ 11, Ex. 12. Relevant asserted patent invalidity based on twenty-one alleged prior art references, but provided claim charts for only five. *Id.* Relevant further asserted that LevelUp's patent was invalid based on "any" combination of the twenty-one asserted references (a total of 24,570 possible combinations if each assertion were limited to a maximum of 4-references). *Id.* None of Relevant's contentions included any discussion of any reason to combine references as required by the Court's local rules. *Id.* Following a meet and confer on December 2, 2015 (one week before Relevant served its Offer of Judgment), Relevant agreed to supplement its deficient invalidity contentions. *Id.*

Finally, Relevant was repeatedly obstructive concerning LevelUp's requests for depositions. On October 19, 2015, LevelUp requested a deposition of Relevant co-founder Gerrine Pan. Carroll Decl., ¶ 14. Relevant waited until October 28, 2015 to inform LevelUp that Ms. Pan would be medically unavailable for a deposition until January. *Id.* Relevant next refused to discuss available dates for depositions of co-founder Dazhi Chen and a second employee. *Id.* After LevelUp noticed each deposition unilaterally, Relevant finally agreed to proceed with a deposition on December 9, 2015. *Id.* As previously briefed to the Court (Dkt. No. 81), Relevant then filed an "emergency" motion on December 2, 2015 preventing that deposition from going forward. *Id.*

Relevant's obstructive behavior and repeated refusal to comply with its discovery obligations establishes that its goal was simply to drag out the case for as long as possible so that it could continue its infringement until it believed it had created a non-infringing alternative approach for the LPQ app. The case is therefore "exceptional." *MarcTec, LLC v. Johnson &*

*Johnson*, 664 F.3d 907, 920 (Fed. Cir. 2012) (awarding fees where party engaged in tactics designed to prolong the litigation and increase expenses); *z4 Techs., Inc. v. Microsoft Corp.*, No. 6:06-CV-142, 2006 WL 2401099, at *24 (E.D. Tex. Aug. 18, 2006) (*aff'd*, 507 F.3d 1340, Fed. Cir. 2007) (case exceptional where individual incidents "collectively appear to represent a pattern which is of disappointment to the Court and a disservice to legitimate advocacy"); *Rambus, Inc. v. Infineon Techs. AG*, 155 F. Supp. 2d 668, 682 (E.D. Va. 2001) (finding case exceptional based on "hinder[ing] discovery efforts" and "obfuscatory discovery responses (*rev'd in part on other grounds*, 318 F.3d 1081, 1106 (Fed. Cir. 2003)); *Halliburton Co. v. Smith Int'l. Inc.*, No. 4:02-cv-269, slip op. at 9, 11-12 (E.D. Tex. Aug. 13, 2004) (awarding attorney fees where defendant was "slow to produce certain discovery" and engaged in other obstructive litigation behavior).

## III.   LevelUp Incurred $24,581.00 in Attorney Fees to Date

As detailed in the attached Declaration of Brian Carroll, ¶¶ 13-14, LevelUp incurred $24,581.00 in outside counsel fees to Findlay Craft between May 1 and December 31, 2015. The invoices reflecting Findlay Craft's reasonable work on this matter, and its rates, are attached as Exhibit 13. Notably, LevelUp was able to keep attorney fees low in this action by relying on its in-house counsel as lead counsel. Carroll Decl., ¶ 13. For the reasons set forth above, this Court should declare this case "exceptional" pursuant to 35 U.S.C. § 285 and award LevelUp a total of $24,581.00 in attorney fees (plus fees incurred after December 31, 2015).

## IV.   This Court Should Award LevelUp Enhanced Damages by Trebling the Damages Amount Awarded in the Judgment

The Judgment of this Court awarded LevelUp $30,000 in damages, inclusive of an unspecified amount of costs. Dkt. No. 90. According to the invoices attached as Exhibit 13 to the Declaration of Brian Carroll, LevelUp's expense disbursements in this action totaled $1,007.95. Not all of those expenses qualify as taxable costs included in the judgment. Nevertheless, LevelUp

requests, pursuant to 35 U.S.C. § 284, that the Court subtract these expenses and treble the remaining portion of the award, $28,992.05. Relevant should be ordered to pay an additional $57,984.10 for its willful infringement of the '619 patent pursuant to Section 284.

As explained above, Relevant's infringement was "willful," as required for this Court to enhance the damages award pursuant to Section 284. *See Seagate*, 497 F.3d at 1371. Relevant knew, or at least should have known, of the '619 patent during the process of its investigation and copying of LevelUp's secure mobile payment technology for use in the LPQ mobile app. *Supra*, pp. 5-7. Relevant at least knew of the patent by May 27, 2015. Yet Relevant neither ceased its infringement nor offered any objectively reasonable argument that its mobile payment feature for LPQ avoided the '619 patent. Relevant finally offered judgment in December 2015. Moreover, Relevant's actions immediately after the filing of the action reflect its knowledge at the time that the system it copied from LevelUp infringed the ''619 patent. *Supra*, pp. 7-9

Each of the nine factors set forth in *Read v. Portec*, which this Court considers in deciding whether, and to what extent, to enhance damages, weighs in favor of trebling the infringement damages awarded to LevelUp. *See* 970 F.2d at 826-27; *see also PACT XPP Techs., AG v. Xilinx, Inc.*, No. 2:07-CV-563-RSP, 2013 WL 4801885, at *3 (E.D. Tex. Aug. 30, 2013) (enhancing damages where "[defendant] carried out a knowing and calculated plan to acquire [plaintiff's] patented technology without compensation"); *Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 848 (E.D. Tex. 2012) (enhancing damages where "Samsung failed to adequately investigate the nature of Fractus's patents").

First, the evidence establishes that Relevant "deliberately copied the ideas or design of" LevelUp. Relevant's principals investigated LevelUp's system throughout 2014 and into 2015, including by gaining credentialed access to LevelUp's SDK and APIs. Boch Decl., ¶¶ 4-11. The

system that Relevant launched for LPQ mimicked LevelUp's system precisely, including through the use of the same payment processing entity (Braintree). *Id*. at ¶ 8.

Second, Relevant, after learning of the '619 patent, never "investigated the patent and formed a good faith belief that it was invalid or that it was not infringed." Rather, Relevant's immediate reaction to LevelUp's Complaint was to seek a license and promise an immediate "redesign." Boch Decl., ¶¶ 13-14; Carroll Decl, ¶¶ 2-3. Relevant never offered a good faith argument against infringement before offering judgment in December 2015. *See* Dkt. No. 41.

Third, Relevant's "behavior in the litigation," including its frivolous pleadings and motions and obstructionist discovery responses (*supra*, pp. 11-12), compels the conclusion that Relevant's strategy was simply to continue to infringe the patent "willfully" while delaying resolution of LevelUp's claim as long as possible and at maximum burden to LevelUp.

Fourth, Relevant's "size and financial condition" provides no argument against the award of $57,984.10 that LevelUp seeks as enhanced damages. Relevant represented to this Court that it will generate ("conservative[ly]") $2.4 million in 2016 revenue (Ex. 9 at 72-73), and told LevelUp that its 2016 revenues would actually be twice that number. *Id*. Either way, Relevant is easily able to bear enhancement of the damages award.

Fifth, the lack of "closeness of the case" supports enhancement of the damages award. As described above, Relevant did not assert any sound defense before ultimately offering judgment.

Sixth and Seventh, "the duration of the misconduct" and lack of "remedial action" supports enhancement. Relevant chose to continue its knowing infringement of the '619 patent for at least seven months while using obstructionist tactics to prevent LevelUp's assertion of its intellectual property rights. During that time, Relevant was able to compete against LevelUp for a number of client opportunities by pitching the use of infringing technology, and to seek time to develop its

own alternative. Carroll Decl., ¶¶ 5-12; Boch Decl., ¶ 8. Relevant has not taken any remedial

action, and indeed continues to infringe in contempt of the Court's injunction.

   Eighth, Relevant's "motivation for harm" to LevelUp supports enhancement. Relevant

chose to copy LevelUp's patented technology specifically to compete in the market with LevelUp

(LevelUp is the only competitor offering that technology), and in connection with a proposal to

LPQ, a client for which LevelUp and Relevant were directly competing. *Id.*

   Finally, Relevant's "attempt[s] to conceal its misconduct" also supports enhancement. In

2014 and 2015, Relevant approached LevelUp under the false premise that Relevant desired to

license and integrate LevelUp's secure mobile payment technology into Relevant's mobile apps.

Boch Decl., ¶¶ 4-7. On that basis, LevelUp granted Relevant credentialed access to LevelUp's

SDK and APIs for testing. *Id.* Had Relevant been forthcoming about its intent to copy LevelUp's

patented system, LevelUp would not have offered to support Relevant's efforts. *Id.*

   For these reasons, the Court should enhance the damages awarded to LevelUp pursuant to

Section 284 by trebling the amount of the judgment. *See Read*, 970 F.2d at 826-27.


                              Respectfully submitted,

Dated: January 21, 2016

                              */s/ Brian Carroll*
                              Brian C. Carroll (*pro hac vice*)
                              SCVNGR, INC. D/B/A LEVELUP
                              101 Arch Street, Suite 400
                              Boston, MA 02110
                              Phone: (617) 233-4167
                              Fax: (617) 812-1276
                              Email: Brian@thelevelup.com

                              Eric Hugh Findlay
                              State Bar No. 00789886
                              Debra Elaine Gunter
                              State Bar No. 24012752
                              FINDLAY CRAFT PC

102 N College Avenue, Suite 900
Tyler, TX 75702
Phone: (903) 534-1100
Fax: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: dgunter@findlaycraft.com

*Attorneys for Plaintiff SCVNGR, Inc. d/b/a LevelUp*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January, 2016 I electronically filed the foregoing Defendant SCVNGR, Inc. d/b/a LevelUp's Motion to Continue with the Clerk of Court using the CM/ECF system, which will send notification to all attorneys of record.

Dated: January 21, 2016                              */s/ Brian Carroll*
                                                      Brian Carroll

## CERTIFICATE OF CONFERENCE IN ACCORDANCE WITH LOCAL RULE CV 7(i)

Undersigned counsel for LevelUp states that it has complied with the meet and confer requirement in Local Rule CV-7(h), including through a telephone conference on January 18, 2016 with counsel for LevelUp (Mr. Carroll) and counsel for Relevant (Mr. Ni and Mr. Massand), but that the parties were unable to narrow these disputes.

Dated: January 21, 2016                              */s/ Brian C. Carroll*
                                                      Brian C. Carroll